J-S42001-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: A.M., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 869 EDA 2020 |

Appeal from the Order Entered March 11, 2020
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-DP-0000016-2020

BEFORE:  PANELLA, P.J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, P.J.:                **FILED NOVEMBER 06, 2020**

Appellant, A.M. ("Father"), files this appeal from the order entered March 11, 2020, in the Philadelphia County Court of Common Pleas, that adjudicated his child, J.S., born in February 2016 ("Child"), adjudicating Child dependent; finding it in Child's best interest and welfare to be removed from the home, and that the Philadelphia Department of Human Services ("DHS") made reasonable efforts to prevent or eliminate the need for removal; and ordering that legal custody transfer to DHS with Child's placement to remain in foster care.  Child's mother, S.S. ("Mother"), did not file a separate appeal

or participate in the instant appeal. After careful review, we affirm the trial court's order.

Mother and Father's family came to DHS's attention in 2017 when DHS filed dependency petitions for two of Mother's children. *See* N.T., 3/11/20, at 11-13. More recently, DHS received a report on November 30, 2019 related to substance abuse by Mother at the birth of her youngest child, who is not the subject of this matter. *See id*. at 8-9, 20. When DHS visited Mother's home in December 2019 to investigate the latest referral, Mother appeared to be under the influence. *See id*. at 10-11. She indicated being prescribed Xanax at thirteen years old but could not produce a current prescription. *See id*. A safety plan was implemented due to other adults in the home, namely a maternal cousin, and an urgent petition was filed on January 6, 2020. *See id*. at 15.

As a result of Mother's whereabouts becoming unknown and the maternal cousin reporting that she was unable to care for all of Mother's remaining four children under her care, including Child,[1] DHS obtained an

---

[1] Mother's infant child was reunified with his father. *See*, 3/11/20, at 10. Mother's remaining four children, including Child, remained under her care with the imposition of a safety plan. *See id*. at 15. While these three other siblings were the subject of the dependency proceedings along with Child, they are not the subject of the instant appeal.

Order of Protective Custody ("OPC") in January 2020. Child was temporarily committed to DHS custody and placed in foster care. *See* N.T., 3/11/20, at 34-35, 40; *see also* N.T., 1/15/20, at 6-7; *see also* Order of Protective Custody, 1/16/20. Pursuant to a shelter care hearing on January 17, 2020, the court lifted the OPC and continued the temporary commitment to DHS. *See* Recommendation for Shelter Care, 1/17/20. The court acknowledged that Mother was hospitalized. *See id*. Child's father was reported as unknown. *See id*. DHS filed an amended dependency petition later in January. *See* Dependency Petition, 1/21/20.

An adjudicatory hearing was scheduled for February 12, 2020 but continued as Father appeared and was appointed counsel. *See* Continuance Order, 2/12/20. The court took brief testimony from Community Umbrella Agency ("CUA") case manager Veronica Soto, Asociación Puertorriqueños en Marcha ("APM"), as to placement and safety. *See* N.T., 2/12/20, at 8-9. Further, Father responded to a few questions from the court. *See id*. at 5-6, 12.

The court then conducted an adjudicatory hearing on March 11, 2020. Mother was present and represented by counsel. Father was not present but was represented by counsel. Child was represented by a guardian *ad litem*

who also served as legal counsel.[2] DHS presented the testimony of DHS social worker, Jerrod Yates; former CUA case manager, Tyesha Grasty; and current CUA case manager, Veronica Soto. Additionally, Mother testified on her own behalf.

The court adjudicated Child dependent. *See* Order of Adjudication and Disposition, 3/11/20, at 1. The court found that it was in Child's best interest and welfare to be removed from the home, and that DHS made reasonable efforts to prevent or eliminate the need for removal. *See id*. at 1-2. The court further ordered that legal custody transfer to DHS with Child's placement to remain in foster care. *See id*. at 2. Thereafter, on March 14, 2020, Father, through appointed counsel, filed a motion for reconsideration. The trial court, however, did not rule on this motion. Also on March 14, 2020, Father, through appointed counsel, filed a timely notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

---

[2] On January 8, 2020, the Defender Association of Philadelphia Child Advocacy Unit was appointed as counsel and guardian *ad litem* for Child. *See* Order Appointing Counsel, 1/8/20. On February 28, 2020, subsequent to the granting of a motion to withdraw, Ruth Brice, Esquire, was appointed as counsel and guardian *ad item* for Child. *See* Order Appointing Counsel, 2/28/20. We observe that Attorney Brice is also referred to as a child advocate. Attorney Brice did not submit a brief to this Court.

Father raises the following issues for our review:

1. Whether the trial court erred as a matter of law or abused its discretion when it determined that the Philadelphia Department of Human Services made reasonable efforts to prevent or eliminate the need for removal of [Child] from his parents' care[?]

2. Whether the trial court erred as a matter of law or abused its discretion when it determined that [Child] is a dependent child[?]

3. [Whether t]he trial court erred as a matter of law and abused its discretion when it entered a disposition that custody of [Child] be transferred to [DHS] [?]

Father's brief at 3 (suggested answers omitted).

Our standard of review for dependency cases is as follows:

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010) (citations omitted). This Court

has highlighted the trial court's direct observation of testimony as the reason

for the distinction between our review of factual findings and our review of

legal conclusions:

In dependency proceedings our standard of review is broad. [*In Re C.J.*]*,* 729 A.2d 89 (Pa.Super. 1999). Nevertheless, we will accept those factual findings of the trial court that are supported by the record because the trial judge is in the best position to observe the witnesses and evaluate their credibility. [*Id.*] We accord great weight to the trial judge's credibility determinations. [*Id.*] "Although bound by the facts, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in

- 5 -

reviewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate." [*Id.*] at 92.

*In re S.J.-L.*, 828 A.2d 352, 355 (Pa. Super. 2003).

We take Father's issues on appeal out of order and address Father's second issue, his challenge to the adjudication of Child as dependent, first. While recognizing that Mother lacked parental care and control, Father argues that, not only did DHS fail to reach out to him, but that they further failed to establish his lack of parental care and control or immediate availability. **See** Father's Brief at 29. Father suggests that he was ready, willing, and able to care for Child and that the only concern raised by DHS was the use of space heaters. **See id**. at 29, 31-32. Father asserts:

> DHS failed to meet the second prong of the test for dependency here, that proper parental control is not immediately available for the Child. In this case, DHS did not contact Father prior to taking custody of the Child. DHS testified that it also did not go out to evaluate [F]ather's home. In fact, DHS was involved with the family for two years and had never reached out to Father. While the Child was born under conditions that would suggest that Mother was not immediately able to provide adequate parental care and control, no neglect, and certainly no abuse, was attributed to Father. At all times, Father has been ready, willing and able to care for the Child. The only issue that DHS testified to concerning Father was his use of space heaters.

*Id*. at 29. He continues:

> In this case, the trial court erred by not determining that parental care and control were immediately available for the Child in Father's care. There was no testimony that Father was unable to provide for the Child. The only factor attributed to Father was the

- 6 -

use of space heaters. This does not amount to a lack of parental care and control, necessitating an adjudication that a child is dependent. There was, therefore, no clear and convincing evidence that Father was not able to immediately provide care and control of the Child.

*Id*. at 31-32.

We review a court order finding a child dependent by assessing whether there is clear and convincing evidence of record capable of establishing the child lacks appropriate parental care:

> [T]o adjudicate a child dependent, a trial court must determine, by clear and convincing evidence, that the child:
>
>> is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk.
>
> 42 Pa.C.S.A. § 6302(1). "Clear and convincing" evidence has been defined as testimony that is "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue."
>
> In accordance with the overarching purpose of the Juvenile Act "[t]o preserve the unity of the family wherever possible," *see* 42 Pa.C.S.A. § 6301(b)(1), "a child will only be declared dependent when he is presently without proper parental care and when such care is not immediately available." This Court has defined "proper parental care" as "that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child."

*In re A.B.*, 63 A.3d 345, 349 (Pa. Super. 2013) (case citations omitted).

Our Supreme Court has held "a child, whose non-custodial parent is ready, willing and able to provide adequate care to the child, cannot be found dependent[.]" *In re M.L.*, 757 A.2d 849, 850-51 (Pa. 2000). The Court held that non-custodial parents who can readily assume responsibility for the child are to be given that opportunity:

> [I]t is the duty of the trial court to determine whether the non-custodial parent is capable and willing to render proper parental control prior to adjudicating a child dependent. If the court determines that the custodial parent is unable to provide proper parental care and control "at this moment" and that the non-custodial parent is "immediately available" to provide such care, the child is not dependent under the provisions of the Juvenile Act. Consequently, the court must grant custody of the allegedly dependent child to the non-custodial parent. Once custody is granted to the non-custodial parent, "the care, protection, and wholesome mental and physical development of the child" can occur in a family environment as the purpose of the Juvenile Act directs. 42 Pa.C.S.A. § 6301(b).

*Id.* at 851 (quoting *In the Interest of Justin S.,* 543 A.2d 1192, 1200 (Pa. Super. 1988)); *see also In re S.J.-L.*, 828 A.2d 352, 355-56 (Pa. Super. 2003) (affirming order terminating dependency and placing child with father without a hearing as the child was not dependent as father was "immediately ready, willing, and able to provide parental care and control").

Father's argument echoes the appellant's argument in *In the Interest of B.B.*, 745 A.2d 620, 622 (Pa. Super. 1999). There, this Court addressed a noncustodial father's argument against dependency that the petitioning

agency had failed to present evidence that he could not provide proper care and control. Important to this Court was the fact that the father was not previously involved or present and, therefore, was not an appropriate parental caregiver:

> To address this issue, we must keep in mind the particular facts of this case. This is not a case where the father is actively involved in his children's lives, nor is it one where the father is uninvolved but has a physical presence. In fact, this case is not one where the father is a once-a-week, month, or year visitor. Father virtually is a stranger to these boys. Throughout the five years CYS has been providing services to Mother and the boys, there is no evidence that CYS even knew this man existed until after it filed the petitions for dependency. This trial court did not fail to consider evidence that Father could provide proper parental care to the children. Rather, it determined that the fact that he is completely unknown to the children prevents his designation as a proper parental caregiver to them. We cannot say this conclusion is erroneous.
>
> The trial court addressed the issue in its opinion, and we adopt its reasoning as our own.

>> In the case at bar, father has never had a relationship with the children, seeing them only once during their lives. Although he says he is *willing* to provide proper parental care ... he has not shown he is *capable* of doing so. Rather, he decided to completely ignore his parental responsibilities altogether, whereas Mother attempted to care for the children but failed. We recognize it is the petitioner's burden to show by clear and convincing evidence father is incapable of providing proper parental care. We feel this has been demonstrated by father's conscious decision not to parent these children.

>> Essentially, father is saying he is "a fit parent by default" in that his absence from the children's lives has prevented CYS[] from knowing anything about him, good or bad. As such, CYS[] was unable to

- 9 -

produce any evidence concerning father's inability to provide proper parental care for the children because he has chosen to be a non-factor in the children's lives and, thus, has had no contact with CYS[]. We feel father's choosing to be a stranger to his children, taking no responsibility for their care and the fact his parental rights could possibly have been terminated demonstrate proper parental care is not immediately available from him.

Furthermore, this court could not in good conscience turn the children over to a strange man rather than a known foster family. Because of his absence from his children's lives, we know nothing about his character, habits, reputation, morals or child-care abilities. All we know about him is he impregnated mother on two occasions and then decided not to be involved in the children's lives.

Contrary to Appellants' position, then, this case does not involve a dearth of evidence to support a conclusion that Father could *not* provide proper parental care, there is sufficient evidence that he cannot do so. The trial court clearly acted properly in declaring the children dependent.

*Id*. (internal citations omitted) (emphasis in original).

Similarly, in **In re J.C.**, 603 A.2d 627, 628-29 (Pa.Super. 1992), we rejected an argument requiring a petitioning agency to locate an absent, non-custodial parent whose whereabouts were unknown:

The Juvenile Act defines a dependent child as one who "is without proper parental care or control...." 42 Pa.C.S.A. § 6302. We have long held that the proper inquiry to decide whether a child lacks proper care and control encompasses two discrete questions: (1) Is the child *at this moment* without proper care and control?; (2) If so, is such care and control *immediately available?* (emphasis ours) Here, it is clear that "at this moment" the children, if the substance of the allegations are correct, are without proper care and control. Moreover, the non-custodial parent is not "immediately available." Appellant would have us

totally undercut the immediacy implicit in the standard used to determine dependency by placing the onerous burden on the local CYS of attempting to locate an absent father. While it is true that the fundamental purpose of the Juvenile Act is to preserve family unity, the above standard reflects a concern that the child be taken out of an abusive environment with dispatch and placed in a more favorable one.

We are especially reluctant to require a local CYS to investigate the whereabouts of an absent non-custodial parent where our legislature has not provided guidance. Judicial restraint demands that we not place on a local CYS a requirement that has no explicit or implicit statutory origin. Investigating the whereabouts of an absent non-custodial parent can be time consuming and costly. This may be especially true because a local CYS may not have the expertise or trained personnel to track down an absent parent. We find the appellant's first argument without merit.

*Id*. (internal citations omitted) (emphasis in original).

Here, the trial court found that Child was currently without appropriate

parental care and no other family resource was immediately available:

Based upon the credible, persuasive testimony presented by DHS, this [c]ourt found clear and convincing, competent evidence to support the allegations set forth in the Petition. The [t]rial [c]ourt found that, based on the evidence, this [c]hild was [d]ependent under section 6302 of the Juvenile Act, as without proper care or control, subsistence, education as required by law, or other care or control necessary for their physical, mental, or emotional health, or morals. This [c]ourt also found that, based upon these findings, it was in the best interest of this [c]hild to be removed from Mother's care and not be placed with Father because he was not ready, willing and able to provide a suitable home for the Child.

This [c]ourt found that DHS had shown by clear, direct, weighty and convincing evidence that the Child lacked proper parental care or control based on the evidence of Mother's drug history and the fact that Mother left the Child and his siblings with the Maternal [Cousin]. Maternal [Cousin] then brought them to

DHS to be placed because she could no longer care for them. This [c]ourt found that DHS made reasonable efforts to place the siblings together, and that DHS was to engage and continue in family finding.

This [c]ourt also found that Father was not ready, willing and able to care for the Child at this time based on his lack of appropriate housing. He lived in a home that did not have proper heating and was using portable electric heaters. Therefore, at this time it would not be in the Child's best interest to be placed with Father.

Trial Court Opinion, 5/13/20, at 10-11.

Upon review, we discern no abuse of discretion in the trial court's adjudication of Child as dependent. As such, we do not disturb it.

Specifically, the evidence supports the court's finding that Child was without proper parental care and control. Father concedes that Child lacked parental care and control from Mother. He states that "DHS knew that Mother had a substance abuse problem and that her housing situation was untenable," and that "Child was born under conditions that would suggest that Mother was not immediately able to provide adequate parental care and control." Father's brief at 17, 29.

However, the record belies that Father was immediately available to provide parental care and control. Critically, Father had no involvement with Child prior to these proceedings. *See* N.T., 3/11/20, at 46. CUA case manager, Veronica Soto, testified that the February hearing was only the

second time Father saw Child. *See id*. at 49. She only recommended supervised visitation between Father and Child due to the lack of a relationship between the two. *See id*. at 48.

Moreover, despite indicating at the February 12, 2020 hearing that he was in a position to care for Child, Father's housing was inappropriate and he failed to secure appropriate housing, *see* N.T., 3/11/20, at 37-38. Soto reported that Father utilized space heaters which are "prone to starting fires." *Id*. at 48. While Father indicated to her that would try to move in with a relative, he was unable to do so. *See id*. at 37. In fact, she testified that Father had conceded his home was not suitable for raising Child:

> **A.** In speaking with [Father], he informed me that his current home was not suitable due to not having proper heating. He was going to speak with an aunt to ask if he can move in so that he can have [Child] with him. However, he has not been successful. On our last communication in the beginning of the week he stated that he still has not been able to --
> . . .
> **Q.** He's not been able to -- he doesn't have appropriate housing for [Child]?
>
> **A.** Right, he doesn't have appropriate housing at this time.

*Id*. at 37-38.

Notably, although Father appeared at the hearing on February 12, 2020, he failed to appear at the adjudicatory hearing on March 11, 2020 to pursue his alleged desire for involvement with Child or present any contrary testimony

as to his ability to provide parental care and control. He does not provide any explanation for his absence.

Given Father's previous lack of involvement related to Child and lack of relationship with Child, the court was entitled to conclude he was not fit for consideration as a proper caregiver. *See B.B.*, 745 A.2d at 623. Further, the evidence presented corroborated that Father lacked parental care and control due to inappropriate housing. Father's argument that DHS failed to present evidence establishing his lack of care or control, fails. *See id*. Similarly, Father's argument that DHS was required to locate him, as an absent, non-custodial parent, also fails. *See J.C.*, 603 A.2d at 628-29. Hence, we discern no abuse of discretion and Father's challenge to the trial court's adjudication of Child as dependent lacks merit.

Next, Father suggests that the trial court utilized the improper legal standard and failed to provide analysis in finding that DHS had made reasonable efforts to prevent Child's placement in foster care. *See* Father's Brief at 16-19. Father again argues that DHS failed to locate and engage him. *See id*. at 19, 21. He further maintains that DHS then failed to offer any assistance as to the heating issues he was experiencing. *See id*. at 21. Father

unironically highlights the length of the dependency proceedings to argue DHS

failed to make reasonable efforts to notify him of Child's lack of parental care:

> The trial court erred here in determining that DHS made reasonable efforts to prevent or eliminate the need for the removal of the Child from his family. Prior to ordering that a child be removed from his home, the trial court was obligated to make a finding that DHS made reasonable efforts to prevent that placement. The trial court ruled that DHS did make reasonable efforts here to prevent [Child]'s placement in foster care.

> However, DHS was involved with this family for nearly the Child's entire life, and had open dependency petitions for his siblings. Mother had serious substance abuse issues, and her housing situation with the children was unstable and unsuitable. Despite this, neither DHS nor its subcontractor CUA agency ever looked to involve Father in [Child]'s life, or consider him as a placement resource, prior to placing [Child] in foster care. This is not a reasonable performance of DHS's social work responsibilities.

> . . .

> This court should vacate the trial court's finding that DHS made reasonable efforts for two separate and independent reasons. First, the trial court ignored the proper legal standard here. Second, under the facts of this case, where DHS was involved in the family's life for two years, where DHS knew that Mother had a substance abuse problem and that her housing situation was untenable, and where for that two year period, DHS failed to ever engage Father, DHS cannot be said to have made reasonable efforts to prevent or eliminate the need for the placement of the Child in foster care.

> . . .

> Analyzing this matter under the correct legal standard, this Court should hold that the [trial] court erred and abused its discretion in finding that DHS made reasonable efforts to prevent or eliminate the need for removal of [Child] from his family. DHS was involved with this family for two years. They knew that Mother's living situation was precarious, and they knew she had a history of substance abuse. Even so, they never reached out to

or engaged Father. Also, once they did, after the Child was already removed from Mother, they based their determination that Father was an inappropriate resource, and thrust the Child into foster care, solely because he had space heaters.

. . .

Here, the trial court erred in determining that DHS made reasonable efforts to prevent the removal of the Child. The trial court did not address the reasonable efforts requirement in its opinion in this case. It also did not provide any explanation for its reasonable efforts finding at the March 11, 2020 hearing. The trail [sic] court did not address Father's Motion for Reconsideration regarding reasonable efforts.

On the basis of the record developed below, it is clear that DHS failed to make any efforts to reach out to, or even find Father. DHS has been involved with the family for two years prior to the removal. DHS failed to inquire about Father's heating bill, or if they could assist with it. If DHS felt that there were any other services that were needed to be provided for Father in order to prevent the Child's removal, they did not testify to any, and at no time did they offer any. Therefore, it is clear that DHS did not meet the reasonable efforts requirement here.

*Id*. at 13, 17, 19, 21.

Father further makes several public policy arguments in support of his position that the trial court erred in finding that DHS used reasonable efforts to prevent removal of Child. *See id*. at 22-28. Father argues that benchmarking, fiscal responsibility, the purpose of the Juvenile Act, and harm to Child, do not support a finding of reasonable efforts here.[3] *See id*.

---

[3] DHS argues that these public policy arguments are waived as they present information outside of the certified record and as Father fails to cite to

- 16 -

In a related argument, Father contends that the evidence did not support a finding that Child's removal was clearly necessary. Father emphasizes his belief that the only evidence of his unavailability was his use of space heaters. **See** Father's brief at 33. Moreover, Father suggests that the court failed to consider options other than removal. **See id**. He states:

> Here, the trial court did not consider the appropriate legal standard before removing the Child from her [sic] parents' care. The testimony did not establish that it was clearly necessary that the Child could not be reunified with his father. There were no issues concerning abuse or neglect with Father. The only issue was Father's use of a space heater. There is no basis in the record, then, for the trial court to find any facts which supported the necessity of removal.
>
> Removal of the Child from their home his parents' care was not the only option here, even if the trial court properly adjudicated him dependent. The trial court could have ordered a disposition that the Child remain with his father, under the supervision of the agency. The trial court, however, did not consider this alternate disposition. Because the clear necessity standard was not met here, this Court should reverse the trial court's order that the Child be removed from his parents' care.

**Id**.

When the court found Child dependent, it had the power remove the child from the home only if it made two explicit findings:

> (1) that continuation of the child in his home would be contrary to the welfare, safety or health of the child; and
>
> (2) whether reasonable efforts were made prior to the placement of the child to prevent or eliminate the need for removal of the

---

appropriate legal authority in his brief. **See** DHS's brief at 20-22. Given our findings as to the merits, we need not address these assertions.

child from his home, if the child has remained in his home pending such disposition;

42 Pa.C.S.A. § 6351.

In addressing reasonable efforts to prevent removal, the trial court

stated:

> Father alleges the [c]ourt erred in transferring custody of the Child to DHS and that DHS made reasonable efforts to prevent or eliminate the need for removal of the Child from his home. This [c]ourt disagrees.
>
> Father, although he availed himself at the 2/12/2020 hearing, and stated he was in a position to parent the Child, later [] informed Ms. Soto, the CUA worker, that he did not have heating and would try to move in with a relative so he could care for the Child. Father then reported to Ms. Soto that he was unsuccessful in obtaining housing.
>
> Father was properly served with a hearing notice on 2/12/2020, and he was served and signed for service on 3/10/2020 for the hearing on 3/11/2020, however, he failed to appear at the Adjudicatory Hearing.
>
> Father did not avail himself to this [c]ourt to testify regarding his housing situation at the Adjudicatory Hearing, nor did Father's attorney inform this [c]ourt as to the reason Father was absent. Therefore, this [c]ourt found that Father was not ready, willing and able to care for the Child because of not having [appropriate] heating in his place of residence. This [c]ourt reasoned it would not be in the Child's best interest to be placed with Father, and it was clear and necessary for the welfare of the Child, to be placed in a safe and appropriate setting.

Trial Court Opinion, 5/13/20, at 11-12.

Here, Father's claims as to reasonable efforts to prevent removal are

meritless as DHS was not required to locate and engage Father as an absent,

uninvolved father. *See J.C.*, 603 A.2d at 628-29. Moreover, the record reveals that DHS did in fact make reasonable efforts to prevent Child's removal as they first left Child in Mother's custody under the auspices of a safety plan in December 2019. *See* N.T., 3/11/20, at 15. They only sought Child's removal once Mother's whereabouts became unknown and her maternal cousin came forward shortly thereafter indicating that she could not appropriately care for the four children, including Child. *See id*. at 15-16, 22, 26, 34-35; *see also* N.T., 1/15/20, at 7.

Father relies on *Interest of K.C.*, 156 A.3d 1179 (Pa. Super. 2017), where this Court found that the trial court was incorrectly focused on reasonable efforts to finalize a placement for Child, as opposed to reasonable efforts to prevent removal. However, unlike the court in *K.C.*, the trial court here did not improperly "appl[y] the standard set forth under [42 Pa.C.S.A. § 6351(f)], related to permanency hearing." *Id*. Rather, the court applied the standard set forth under 42 Pa.C.S.A. § 6351(b). The court specifically found that DHS "made [r]easonable [e]fforts to prevent or eliminate the need for removal of this child from the home." Order of Adjudication and Disposition, 3/11/20, at 2. Likewise, we observe that, although in a footnote, the court explicitly cited to and set forth 42 Pa.C.S.A. § 6351(b), the applicable statute

- 19 -

setting forth the standard as to reasonable efforts to prevent removal. *See* Trial Court Opinion, 5/13/20 at 11.

Further, for the same reasons as set forth above in support of the determination finding Child dependent, the record likewise supports clear necessity for removal. Given the lack of relationship between Father and Child and the lack of parental care and control, the trial court was entitled to conclude that removal of Child was "best suited to the protection and physical, mental, and moral welfare of the child." *In re S.M.*, 614 A.2d 312, 314-15. As determined by the court here, "it was clear and necessary for the welfare of the Child[] to be placed in a safe and appropriate setting." Trial Court Opinion, 5/13/20, at 12. There is ample record support for this conclusion. Accordingly, we again discern no abuse of discretion.

As a result, for the foregoing reasons, we affirm the trial court's order adjudicating Child dependent and ordering that legal custody transfer to DHS with Child's placement to remain in foster care.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/6/20</u>